244 N.J. Super. 582 (1990)
583 A.2d 352
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALISON TOWEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 10, 1990.
Decided March 2, 1990.
*586 Before Judges KING, SHEBELL and KEEFE.
Stephen W. Kirsch, Assistant Deputy Public Defender, argued the cause for the appellant (Alfred A. Slocum, Public Defender, attorney for appellant; Stephen W. Kirsch, Assistant Deputy Public Defender, of counsel and on the brief).
Carol M. Henderson, Deputy Attorney General, argued the cause for the respondent (Peter N. Perretti, Jr., Attorney General of New Jersey, attorney for respondent; Carol M. Henderson, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by KEEFE, J.A.D.
The questions to be decided on this appeal are: 1) whether the Supreme Court's remand in State v. Towey, 114 N.J. 69, 552 A.2d 994 (1989) (Towey I) invited the sentencing judge to reassess the validity of the ten year base term originally imposed upon the defendant; 2) whether the sentencing judge's decision to impose the presumptive 15 year prison term on resentencing was in accord with proper sentencing guidelines; 3) whether the increase in the base term sentence from ten to 15 years was a violation of the Double Jeopardy Clause of the federal and State constitutions; and 4) whether, regardless of *587 what base term is appropriate, the five year parole ineligibility term is valid.
We answer the foregoing question as follows. The Supreme Court's opinion in Towey I questioned the validity of both the base term and the Graves Act parole ineligibility term. Consequently, it remanded the entire matter for resentencing. At the resentencing, although misapplying certain aggravating and mitigating factors, the sentencing judge properly concluded that he had originally erred in imposing the minimum ten year base term. The sentencing judge then correctly concluded that the appropriate base sentence was the presumptive term of 15 years together with the minimum parole ineligibility period of one-third of the base sentence, five years, required by the Graves Act. However, the increase in the base term sentence from ten to 15 years violates the Double Jeopardy Clause of the United States Constitution. U.S. Const. amend. V. Therefore, the 15 year base term sentence imposed upon resentencing is vacated and the judgment of conviction is modified to reinstate the original ten year base term imposed at the first sentence. Because the base term must remain at ten years for constitutional reasons but not for reasons mandated by the sentencing guidelines, the sentencing judge was not required to justify the five year parole ineligibility term by correlating it to the incorrect ten year base term. Instead, the five year Graves Act sentence is sustainable as the minimum parole disqualifier permitted on a presumptive term that should have been imposed at the first sentencing. Thus, as modified, the judgment under review is affirmed.
The facts of this case are set forth in detail in Towey I and need not be repeated in detail herein. Suffice it to say that on October 10, 1985, after ingesting approximately two quarts of liquor and a quantity of methamphetamines, defendant shot and killed her husband, William Towey. Thereafter, defendant entered a plea of guilty to an accusation charging her with first degree aggravated manslaughter for which she could have been *588 sentenced to a term of between ten and 20 years.[1] On October 10, 1986 defendant was sentenced to a ten year term of incarceration, the minimum permissible base term, with a five year parole disqualifier, the maximum Graves Act sentence based upon that base term.
Defendant appealed her sentence contending that the imposition of the maximum Graves Act sentence was inconsistent with the minimum base term. After an affirmance of the sentence in the Appellate Division, the Supreme Court granted certification and thereafter remanded the matter to the Law Division "for resentencing." Towey, 114 N.J. at 86, 552 A.2d 994.
At the resentencing, defendant contended that she has made a remarkable turnaround in her life and attitude since her confinement at the Edna Mahan Correctional Facility for Women. In support of her contention she submitted, along with other documents, the letter of Dr. Harry Zall, a Board certified psychiatrist. Dr. Zall examined and treated defendant before her original sentencing and interviewed her in prison for over two hours prior to resentencing. The other documents disclosed that defendant participated in a drug and alcohol program and founded the Narcotics Anonymous program at the prison. The material also reveals that defendant has expressed a desire to pursue a career in addiction counselling upon her release from prison. Toward that career, defendant has taken college courses while incarcerated and plans to obtain a college degree as soon as possible. Finally, the documents disclose that defendant has been instrumental in counselling and educating others through the above programs and through her work as a para-professional in the education department at Edna Mahan.
*589 The sentencing judge refused to consider anything that had occurred since the original sentencing, holding that the "defendant's progress, both emotionally and psychologically" "both before and since her incarceration, are certainly very important matters for consideration, but not for me." He felt that only the parole board had a right to consider that information.
At resentencing, the judge found that the mitigating factors did not preponderate over the aggravating factors and concluded that the original ten year base term was not justified. As a result, he imposed the presumptive base term of 15 years and the minimum parole ineligibility period permitted by the Graves Act based on the presumptive term, i.e., five years. Defendant now appeals from that determination. On appeal she challenges both the constitutionality of the higher base term and the propriety of the five year parole disqualifier.
In Towey I the Supreme Court addressed the parameters of a sentencing judge's discretion when deciding the term of parole ineligibility permitted under the Graves Act for the first time. It observed that the Legislature prescribed no standards to guide the trial courts in the imposition of the appropriate parole ineligibility term. Towey, 114 N.J. at 80, 552 A.2d 994. However, in view of the legislative decision to make aggravating and mitigating factors relevant for parole ineligibility decisions in non-Graves Act offenses, the Court concluded that the legislative intent would best be served by requiring sentencing judges to refer to the aggravating and mitigating circumstances of the case when imposing a parole ineligibility term more than the minimum required by the Graves Act. It further concluded that in Graves Act cases, as in non-Graves Act cases, there must be some consistency between the base term imposed and the parole ineligibility period. Thus, the Court said:
[W]e hold that the specific length of parole ineligibility terms, in both Graves Act and non-Graves Act cases, must ordinarily be consistent with the length of the base term imposed by the court, and with the court's evaluation of the relevant aggravating and mitigating factors. In Graves Act sentences, the length of the minimum term can also be affected by the extent of the harm *590 threatened or caused by the defendant's use or possession of the firearm. [Id. at 81, 552 A.2d 994.]
* * * * * * * *
Since the sentencing court must weigh aggravating and mitigating factors in order to impose a sentence higher or lower than the presumptive term, we would ordinarily expect a high degree of correlation between the length of the base term and the relative severity of the parole ineligibility term. [Id. at 82, 552 A.2d 994.]
Because the base term imposed by the sentencing judge is an important reference point in determining the appropriateness of the parole ineligibility term, the Court also took the opportunity to review the principles to be utilized in determining the appropriate base term. Those principles had been previously explained in State v. Roth, 95 N.J. 334, 471 A.2d 370 (1984) and State v. Hodge, 95 N.J. 369, 471 A.2d 389 (1984). The Court said:
As we explained in State v. Roth, supra, 95 N.J. 334 [471 A.2d 370], the Code promotes sentencing uniformity by establishing presumptive terms for each degree of crime, N.J.S.A. 2C:44-1f, within the prescribed sentencing ranges set forth in N.J.S.A. 2C:43-6a. The sentencing court may then adjust the presumptive term upward or downward depending on its evaluation and balancing of the aggravating and mitigating factors listed in N.J.S.A. 2C:44-1(a) and (b). Id. at 359 [471 A.2d 370]. [Towey, 114 N.J. at 79, 552 A.2d 994.]
In light of the well established principles of sentencing used to determine the appropriate base sentence and the guidelines relative to Graves Act sentences it had just announced, the Court reasoned that a remand was necessary because "the trial court erred in two respects." Towey, 114 N.J. at 83, 552 A.2d 994.
First, the court sentenced defendant to a base term of ten years, the lowest sentence within the presumptive range for first degree crimes, without making an express determination that the preponderance of mitigating over aggravating factors weighed in favor of a term lower than the presumptive term. N.J.S.A. 2C:44-1f(1). The trial court merely observed that although there were more aggravating factors than mitigating factors, there was `more than one mitigating circumstance.' This abbreviated discussion of the aggravating and mitigating factors does not reflect the qualitative weighing process contemplated by the Code. As we observed in State v. Roth, supra: `The [aggravating and mitigating] factors are not interchangeable on a one-to-one basis. The proper weight to be given to each is a function of its gravity in relation to the *591 severity of the offense.' (citation omitted). [Towey, 114 N.J. at 83-84, 552 A.2d 994.]
* * * * * * * *
In addition, the trial court did not sufficiently explain the apparent inconsistency between a base term at the bottom of the range for aggravated manslaughter, and the maximum Graves Act sentence that could be imposed on that base term. As noted, we would ordinarily anticipate in Graves Act cases that the most severe parole ineligibility terms would be imposed in conjunction with base terms that exceed the presumptive term. [Id. at 84, 552 A.2d 994 (emphasis added).]
The court gave specific and individualized instructions concerning the two perceived errors. With reference to the first error, the instruction to the sentencing judge was:
[O]n remand the trial court should qualitatively evaluate the aggravating and mitigating factors, explaining that evaluation on the record in sufficient detail to permit appellate review. A sentence below the presumptive term for aggravated manslaughter would be permissible only if that evaluation leads to a finding that a preponderance of mitigating over aggravating factors weighs in favor of a term lower than the presumptive term. [Id. (citation omitted).]
With respect to the second error, the sentencing judge was instructed
[o]n remand, [to] clearly reconcile on the record any apparent disparity between the base sentence and the parole ineligibility term in a manner consistent with the principles set forth in this opinion. [Id. at 84-85, 552 A.2d 994.]
At the resentencing hearing, the sentencing judge understood his instructions to require a re-evaluation of the aggravating and mitigating factors on a qualitative basis and determine whether he correctly sentenced defendant to a base term of ten years. He apparently believed that if he concluded that the presumptive term was the appropriate sentence, then the minimum sentence under the Graves Act was required (the same five year parole ineligibility term as originally sentenced). In such event no explanation was necessary, because the Supreme Court had said "the aggravating and mitigating factors play no part in the decision to impose a minimum term in Graves Act cases." Id. at 69, 552 A.2d 994.
We conclude that, although the sentencing judge misunderstood portions of the Supreme Court's opinion and misapplied some of the sentencing factors, he properly interpreted the *592 general purpose of the remand instructions and applied the correct analysis to the facts.
At resentencing, the judge found four aggravating factors. First, he determined that, although defendant was "drunk" and "stoned" on a controlled dangerous substance, she knew what she was doing in that her condition was voluntarily acquired. He further found that she was aware of the fact that she was in possession of a "loaded, lethal weapon" which she had fired several times during the argument with her husband. Second, he determined that the victim's death by a firearm was an aggravating factor. He had not considered this aggravating factor in the first sentence but felt compelled to find it as a result of the Supreme Court's opinion. Third, he concluded that there was some risk of recurrence due to the defendant's "instability" and uncertainty about the success of her treatment for drug and alcohol problems. Fourth, he found a need to specifically deter defendant and others from committing crimes of this nature.
The only mitigating factor considered by the sentencing judge at the second sentence was the fact that this was defendant's first offense. At the first sentence, he had considered defendant's efforts to address her drug and alcohol dependence through psychiatric treatment as a mitigating factor. However, he refused to consider that information at the resentencing, believing that the Supreme Court had criticized him for doing so. Moreover, as indicated earlier, the judge refused to consider defendant's rehabilitation efforts during her two and one-half years in prison as those efforts might relate to the subject of the risk of recurrence of criminal activity.
The judge then determined that a qualitative assessment of the sole mitigating factor in comparison with the "extreme weight of the aggravating factors" was not sufficient to overcome the presumptive 15 years sentence for this type of offense. On appeal, defendant contends that the judge was not justified in finding any aggravating factors and should have *593 considered her remarkable rehabilitation efforts in prison as a mitigating factor in favor of non-recurrence of criminal activity.
Both the victim's death and the recklessness of defendant's conduct were elements of the offense to which defendant pled guilty and, thus, should not have been considered as aggravating factors in imposing the base term. State v. Yarbough, 100 N.J. 627, 633, 498 A.2d 1239 (1985), cert. den. 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986). In Towey I the Court said that the extent of the injury to the victim by use of a firearm may be considered only "in fixing the length of the parole ineligibility term." Towey, 114 N.J. at 83, 552 A.2d 994. The sentencing judge mistakenly understood the decision to permit him to consider the victim's death in the base sentence. However, reference to the use of a firearm in the commission of the crime was permissible because it is not an element of the offense and exhibits conduct that in law may be separately punishable. See State v. Boyer, 221 N.J. Super. 387, 405-06, 534 A.2d 744 (App.Div. 1987), certif. den. 110 N.J. 299, 540 A.2d 1280 (1988).
Clearly, aggravating factor 3  "The risk that the defendant will commit another offense," N.J.S.A. 2C:44-1a(3), is related to mitigating factors 8  "The defendant's conduct was the result of circumstances unlikely to recur," and 9  "The character and attitude of the defendant indicate that he is unlikely to commit another offense." N.J.S.A. 2C:44-1b(8), (9). Defendant contends that, had the judge considered her post-sentencing rehabilitation accomplishments, he would not have found that a risk of recurrence still existed. She contends that the supplemental information rejected by the sentencing judge proved the existence of mitigating factors 8 and 9 and negated aggravating factor 3. We agree with defendant that when resentencing has been ordered, all current information relevant to an appropriate appraisal of the factors should be considered. *594 State v. Jarbath, 114 N.J. 394, 409-11, 555 A.2d 559 (1989).[2] Without that information the resentencing process takes on a fictional component unwarranted by any reasonable analysis of its clear purpose. At sentencing, a defendant is entitled to be considered as a "whole" person. State v. Green, 62 N.J. 547, 566, 303 A.2d 312 (1973).
Defendant asks that we not remand this case to the sentencing judge for further consideration of the material presented if we agree with her that the additional documentation should have been considered. A remand is unnecessary where the question presented is totally based on "a `paper record' which the appellate courts are as equipped to evaluate as the sentencing court." Jarbath, 114 N.J. at 412, n. 4, 555 A.2d 559. Indeed, in view of the sentencing judge's retirement, a remand would be impractical. Therefore, in the exercise of our original jurisdiction we have reviewed the material submitted by defendant. We conclude from that examination that defendant has made a most satisfactory rehabilitative effort and agree that the risk assessment initially undertaken by the sentencing judge is made somewhat easier by the current evidence.
Nonetheless, we cannot conclude that there is no risk present. To the extent that an argument can be made that defendant's reckless criminal behavior was caused by her alcohol and drug dependency, we are not able to conclude that the causative factors have been eliminated. Dr. Zall evaluates the level of risk as dependent on defendant's ability to remain "abstinent from the use of ethanol and illicit drugs." At best, we can only say that the risk of recurrence is now considerably less than it was at the time of the initial sentencing and that *595 her current attitude, if maintained, make it less likely that she will commit another offense. The difficulty of predicting future behavior of people who are prone to be drug and alcohol dependent prevents us from totally accepting defendant's position.
Finally, defendant contends that the sentencing judge erred in concluding that deterrence was an aggravating factor. In this respect, defendant relies upon the Supreme Court's reasoning in Jarbath. We disagree with defendant's analysis. Unlike the defendant in Jarbath who had no idea what she did was wrong or why she was being punished, Towey is an intelligent woman who abused drugs and alcohol and used a firearm to kill her husband. The Legislature has deemed that a presumptive sentence is warranted for this offense, specifically because of the punishment and deterrent value of such a sentence. State v. Dunbar, 108 N.J. 80, 90, 527 A.2d 1346 (1987). Because defendant is capable of understanding the nature and quality of her conduct, the legislative determination that a prison term is necessary as a deterrent factor is not diminished simply because defendant has now a more enlightened insight into her anti-social behavior. Just as clearly, defendant's punishment stemming from the abuse of alcohol and drugs in connection with the use of an illegal firearm serves as a deterrent effect on others similarly disposed.
The focus of the criminal Code is on the nature of the offense, rather than on the nature of the offender. For that reason, published decisions on the subject have continuously emphasized that aggravating and mitigating factors do not have equivalent value. The qualitative assessment must always have the severity of the crime as its principal consideration. Hodge, 95 N.J. at 377-79, 471 A.2d 389; State v. Gerstofer, 191 N.J. Super. 542, 546-47, 468 A.2d 436 (App.Div. 1983), certif. den. 96 N.J. 310, 475 A.2d 599 (1984). Crimes committed under the influence of alcohol or drugs do not detract from the seriousness of the offense. Roth, 95 N.J. at 368, 471 A.2d 370. With those principles in mind we hold that the sentencing judge *596 properly concluded that the mitigating factors did not preponderate over the aggravating factors. Clearly, the presumptive 15 year base prison term was the correct sentence for this offense.
Defendant contends that by increasing the base term of her sentence from ten to 15 years, the trial judge violated her constitutional right against double jeopardy. The State, on the other hand, argues that by appealing her sentence, defendant has opened the entire sentencing package for review and, thus, is not entitled to the protection of the Double Jeopardy Clause. The State contends that the Supreme Court has acknowledged the validity of the State's argument by vacating defendant's entire sentence and remanding the matter for resentencing.
The Supreme Court did not address the impact that its decision might have on defendant's double jeopardy rights. Indeed, it had no reason to do so since the Court had no idea what the sentencing judge would do on remand. For that reason, we can infer nothing from the Court's silence on that issue. Clearly, if the sentencing judge on remand justified his first conclusion that the mitigating factors outweighed the aggravating factors and kept the base term at ten years, there would be no double jeopardy implications.
Defendant relies upon the Supreme Court's statement in State v. Ryan, 86 N.J. 1, 10, 429 A.2d 332 (1981), cert. den. 454 U.S. 880, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981), that "jeopardy attaches once the defendant has commenced serving his prison term." Defendant reasons that because she began serving her term the Double Jeopardy Clause prevents a court from increasing her sentence under Ryan.
New Jersey has "consistently followed the principles of the federal Double Jeopardy Clause because its language is broader than our State's." Roth, 95 N.J. at 344, 471 A.2d 370. See North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Generally speaking, the imposition of a sentence in a criminal case does not have the same double jeopardy impact as an acquittal. Thus, the imposition of sentence *597 does not have the effect of an "implied acquittal" of a greater sentence. United States v. DiFrancesco, 449 U.S. 117, 133, 101 S.Ct. 426, 435, 66 L.Ed.2d 328 (1980). For example, a court may recall a defendant and impose a greater sentence where the defendant has not yet begun to serve the original sentence, the government may be given the right to appeal a sentence in certain circumstances, and a defendant's probation may be revoked with the imposition of a jail term, all without violation of the Double Jeopardy Clause. Id. at 135-36, 101 S.Ct. at 436-37.
In the area of sentencing, Double Jeopardy Clause violations are analyzed in terms of the defendant's legitimate expectation regarding the finality of his sentence. Id. at 136, 101 S.Ct. at 437. See also Pennsylvania v. Goldhammer, 474 U.S. 28, 30, 106 S.Ct. 353, 354, 88 L.Ed.2d 183 (1985); United States v. Shue, 825 F.2d 1111, 1115 (7th Cir.1987), cert. den. 484 U.S. 956, 108 S.Ct. 351, 98 L.Ed.2d 376 (1987); State v. Sanders, 107 N.J. 609, 619, 527 A.2d 442 (1987); State v. Rodriguez, 97 N.J. 263, 271, 478 A.2d 408 (1984); Ryan, 86 N.J. at 9-10, 429 A.2d 332. Thus, a defendant has no expectation in the finality of his sentence where he knows that the government has a right to appeal the sentence imposed. DiFrancesco, 449 U.S. at 136, 101 S.Ct. at 437; Roth, 95 N.J. at 344-45, 471 A.2d 370. Nor does a defendant have such an expectation when he challenges underlying convictions which, if successful, destroy the sentencing plan under which he was originally sentenced. Shue, 825 F.2d at 1115; United States v. Colunga, 812 F.2d 196 (5th Cir.1987), cert. den. 484 U.S. 857, 108 S.Ct. 165-66, 98 L.Ed.2d 120 (1987). However, in the latter case, the defendant does have an expectation that, if some of his convictions are set aside and he is resentenced, he will not be resentenced to a higher aggregate term than the original sentence. Shue, 825 F.2d at 1115; Rodriguez, 97 N.J. at 275, 478 A.2d 408. The latter concept is one of elemental fairness which encourages rather than chills a defendant's decision to appeal a meritorious sentencing issue.
*598 In this case defendant did not directly challenge her entire sentence. She only questioned the correctness of the parole ineligibility period in light of the ten year base term. The narrowness of her argument is supported by the record before the Excessive Sentencing Panel and her Petition for Certification to the Supreme Court. Indeed, the Supreme Court recognized the narrow issue raised by the appeal at the outset of its opinion.
In this case we must determine whether a trial court may impose the maximum parole ineligibility term permitted by the Graves Act, N.J.S.A. 2C:43-6c, in conjunction with the minimum base term within the presumptive sentencing range for aggravated manslaughter, a first-degree crime. Thus, the narrow legal issue before us is whether the Graves Act, in the context of the sentencing philosophy reflected in our Code of Criminal Justice, contemplates any limitations on a sentencing court's exercise of discretion in setting the length of a mandatory parole ineligibility term. [Towey, 114 N.J. at 72, 552 A.2d 994.]
Clearly, when defendant filed her appeal she had an expectation that the base prison term of ten years would be preserved while her parole ineligibility term would either be found excessive or affirmed. The State's contention that defendant attacked the entire sentencing plan is simply not supported by the record.
In its opinion, the Supreme Court advocated the principle that whether a Graves Act sentence is excessive depends upon its relationship to the appropriate base term. We interpret the opinion as directing the sentencing judge to reassess his decision concerning the base term only insofar as it relates to the appropriate parole ineligibility period. The opinion was not an invitation to the trial judge to increase the base term. Were we to conclude otherwise, no defendant in this State would challenge the excessiveness of a parole disqualifier for fear that his base term could be increased if an appellate court thought the base sentence was too lenient. In essence, the State would be given an implied right of cross-appeal in a circumstance clearly not envisioned by the Legislature.
The State argues that even if the trial judge erred in increasing the base term, the increase has no impact on the *599 defendant's liberty interest because under either sentence she will be eligible for parole at the same time. We disagree. The increase in the base term clearly impacts on defendant's liberty interests in a significant way. First, there is no guarantee that defendant will be released on her parole date. N.J.S.A. 30:4-123.53(a). Thus, if she is not deemed suitable for parole at that time, she is exposed to possible parole disqualification for an additional five years. However, even if defendant is paroled on time, a 15 year base term rather than a 10 year base term will subject her to parole restrictions for an additional five years. See Ryan, 86 N.J. at 6-7 n. 3, 429 A.2d 332.
In summary, defendant's increased base sentence from 10 to 15 years is a violation of the Double Jeopardy Clause and must be vacated. The original base term of ten years is reinstated.
That does not mean to say, however, that we must impose the minimum Graves Act parole ineligibility period of 3 1/3 years on the ten year base term. We read Towey I to require a justification of the parole ineligibility term as it correlates to the appropriate base term for the crime. The Supreme Court said, "we would ordinarily expect a high degree of correlation between the length of the base term and the relative severity of the parole ineligibility term." Towey, 114 N.J. at 82, 552 A.2d 994 (emphasis added). As we see it, the result here is no different from a hypothetical situation in which this defendant pled guilty pursuant to a plea bargain in which the judge was required to impose a base term of no more than 10 years but was not bound to any Graves Act term. If the judge in the hypothetical case imposed the maximum parole disqualifier to that sentence, five years, rather than the minimum parole disqualifier, 3 1/3 years, his decision could be affirmed if the record revealed that the mitigating factors did not preponderate over the aggravating factors. See State v. Kruse, 105 N.J. 354, 361, 521 A.2d 836 (1987).
By analogy to the foregoing example, because the ten year base term which defendant is to serve in this case is not based *600 upon a qualitative balancing of the aggravating and mitigating factors but rather on double jeopardy principles, it cannot be expected that there will be a correlation between the base term and the parole disqualifier. It is the ten year term that is erroneous, not the five year parole ineligibility term. As the Supreme Court in DiFrancesco observed:
"The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner.' [DiFrancesco, 449 U.S. at 135, 101 S.Ct. at 436 (quoting Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947)).]
The error committed by the sentencing judge in this case was in establishing the base term, not the parole ineligibility period. But for the Double Jeopardy Clause, the appropriate sentence would be the presumptive term of 15 years, requiring a minimum parole ineligibility term of five years under the Graves Act. The challenged parole ineligibility period must be assessed in terms of the appropriate base term. If the sentencing judge has been too lenient in imposing the base term, the defendant does not benefit doubly from his mistake.
The base term of 15 years imposed at resentencing is vacated and the ten year base term originally imposed is reinstated. As modified, the judgment under review is affirmed.
NOTES
[1] After sentencing in this matter N.J.S.A. 2C:11-4c was amended, effective December 8, 1986, to increase the penalties for aggravated manslaughter to between 10 and 30 years incarceration.
[2] This is to be distinguished from the material to be considered in determining whether the original sentence was in accord with accepted guidelines. In that consideration, only the evidence before the sentencing judge is appropriate for consideration.