280 N.J. Super. 331 (1995)
655 A.2d 452
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH EIGENMANN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 14, 1994.
Decided March 23, 1995.
*333 Before Judges GAULKIN, KESTIN and RODRIGUEZ.
*334 Susan L. Reisner, Public Defender, attorney for appellant (William Welaj, Designated Counsel, on the brief).
Michael Brooke Fisher, Cumberland County Prosecutor, attorney for respondent (Theresa A. Berresford, Assistant Prosecutor, on the brief).
The opinion of the court was delivered by GAULKIN, P.J.A.D.
This sentence appeal comes before us for the third time.
In November 1990, defendant was found guilty by a jury of first-degree aggravated sexual assault (N.J.S.A. 2C:14-2a(3)), simple assault (N.J.S.A. 2C:12-1a(1)) and third-degree terroristic threats (N.J.S.A. 2C:12-3b). He was sentenced as a young adult offender (N.J.S.A. 2C:43-5) to concurrent custodial terms aggregating 28 months. The State appealed, contending that the sentences were illegal; defendant cross-appealed, alleging a number of trial errors. We affirmed the convictions in June 1992, but found that the court "could not lawfully impose less than five-year indeterminate terms on the first- and third-degree convictions."[1] The matter was accordingly remanded to the trial court for resentencing.
The original sentencing judge had died. When the resentencing was moved before another Law Division judge in July 1992, defense counsel advised the court that defendant had fully served his 28-month sentences and had "maxed out." Counsel argued *335 that "double jeopardy bars any additional time" and that in any event "the outer limits of [any additional sentence] ... is five years." The judge rejected those contentions, finding that defendant "has no vested interest in any illegal sentence." The judge chose not to sentence defendant as a young adult offender but rather committed him to the custody of the Commissioner of the Department of Corrections for concurrent terms aggregating fifteen years.
Defendant appealed, urging that the sentence "violates double jeopardy" and that "sentence should have been imposed pursuant to the young adult offender statute." This court affirmed in a June 1993 order, determining that "the sentence is not manifestly excessive or unduly punitive and does not constitute an abuse of discretion." In December 1993, on defendant's petition for certification, the Supreme Court summarily remanded the matter to us "for consideration of the double jeopardy issue on the merits."

I
At the original sentencing, the trial judge described the first-degree offense as "vicious" and "brutal," but told defendant that he had "a right" to be sentenced as a young adult offender and that he would "extend that statute to you because that's the law and I intend to follow the law." The judge correctly recited that a five-year indeterminate term was the mandated young adult offender sentence for a crime having a statutory maximum sentence above five years, and that "for good cause shown, the Court can impose a sentence up to the statutory maximum." The judge stated his intent to impose "the maximum that I can sentence you," which he found to be 28 months, apparently relying on "the primary [parole] eligibility terms available to me under the young adult offender [statute]." At the conclusion of the sentencing, the judge stated that the concurrent 28-month indeterminate sentences "are the maximum that the statute provides. If I could do any better, I would, but that's all I can do, I'm helpless."
*336 The State immediately asked the trial judge to stay the sentence because "the State is exercising its right to appeal that sentence pursuant to N.J.S.A. 2C:44-1f(2)." The judge found that statute inapplicable and accordingly denied a stay. The State then moved before us for a stay of sentence pending appeal, which we granted. However, neither the prosecutor nor defense counsel took any steps to effectuate the stay and defendant served out his 28-month sentence in full. In the papers before us defendant avers, without objection or contradiction, that he was never given an opportunity to make any election to execute, or not execute, his sentence pending appeal. See R. 2:9-3(d).
We reject the State's argument that, pursuant to R. 2:9-3(d), defendant waived his right to challenge any sentence increase on grounds that execution of the sentence had commenced. As the trial judge found, the original sentence was not imposed pursuant to N.J.S.A. 2C:44-1f(2): that section provides only that, with respect to first- and second-degree crimes, the State may appeal (1) any noncustodial or probationary sentence and (2) any custodial sentence appropriate to a crime of one degree lower. The mandate that the sentence "shall not become final for 10 days in order to permit the appeal of such sentence by the prosecution," ibid., thus never came into play. The R. 2:9-3(d) waiver provision, which applies only to appeals taken by the State pursuant to N.J.S.A. 2C:44-1f(2), was never implicated. In any event, defendant's uncontradicted showing is that he did not elect to execute the sentence after it had been stayed. The condition fixed by R. 2:9-3(d) for imposing a waiver thus was not satisfied. See State v. Williams, 203 N.J. Super. 513, 497 A.2d 550 (App.Div. 1985). Defendant's double jeopardy challenge to the sentence increase has not been waived.

II
The double jeopardy provisions of both the United States and New Jersey Constitutions protect against a second prosecution for the same offense after acquittal, against a second prosecution *337 for the same offense after conviction, and against multiple punishments for the same offense. United States v. DiFrancesco, 449 U.S. 117, 129, 101 S.Ct. 426, 433, 66 L.Ed.2d 328, 340 (1980); No Illegal Points v. Florio, 264 N.J. Super. 318, 332, 624 A.2d 981 (App.Div.), certif. denied, 134 N.J. 479, 634 A.2d 526 (1993). The issue is whether the resentencing here resulted in multiple punishments for the same offense.
Our Supreme Court has described DiFrancesco as holding that "the touchstone of the double jeopardy analysis lies in the expectation of finality that a defendant vests in his sentence." State v. Sanders, 107 N.J. 609, 619, 527 A.2d 442 (1987). Thus a defendant who has begun to serve his sentence may not be exposed to an increase in its term if he "had no reason to expect that his original sentence was not final at the time it was imposed and his imprisonment began." State v. Ryan, 86 N.J. 1, 10, 429 A.2d 332, cert. denied, 454 U.S. 880, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981); see also Sanders, 107 N.J. at 620, 527 A.2d 442. No defendant can claim a legitimate expectation of finality in a sentence below the statutorily mandated minimum sentence; an illegal sentence can be corrected even if it means increasing the term of a custodial sentence that defendant has begun to serve. State v. Baker, 270 N.J. Super. 55, 74-77, 636 A.2d 553 (App.Div.), aff'd o.b., 138 N.J. 89, 648 A.2d 1127 (1994).
Defendant therefore is in no position to dispute that his illegal 28-month sentence could be increased after he had begun serving that term. The question is whether he was lawfully resentenced to an ordinary, i.e., not a young adult, custodial term greater than the minimum young adult offender sentence of five years.
No reported New Jersey decision has expressly considered whether a sentence below the statutory minimum can be increased beyond that required to remedy the illegality. By and large, our cases increasing illegal sentences either sustain the imposition of the minimum sentence authorized by statute, e.g., Baker, supra; State v. Sheppard, 125 N.J. Super. 332, 310 A.2d 731 (App.Div.), certif. denied, 64 N.J. 318, 315 A.2d 407 (1973), or order resentencing *338 without discussion of any possible limitations. See, e.g., State v. Kirk, 243 N.J. Super. 636, 581 A.2d 115 (App.Div. 1990); State v. Fisher, 115 N.J. Super. 373, 279 A.2d 885 (App.Div. 1971). A few of the cases, however, offer useful, if indirect, guidance.
In State v. Jurcsek, 247 N.J. Super. 102, 588 A.2d 875 (App.Div.), certif. denied, 126 N.J. 333, 598 A.2d 891 (1991), the trial judge had erroneously sentenced defendant for third-degree, rather than second-degree, theft. We ordered resentencing, noting that, because defendant had not begun serving his sentences, "the imposition of an appropriate term for a second-degree offense will not raise any double jeopardy questions." Id. at 110, 588 A.2d 875. The implication is that the court's authority may be more limited in resentencing to correct an illegal sentence after execution of the sentence has begun.
In State v. Towey, 244 N.J. Super. 582, 583 A.2d 352 (App.Div.), certif. denied, 122 N.J. 159, 584 A.2d 226 (1990), defendant had been sentenced to a 10-year custodial term with five years of parole ineligibility on her plea of guilty to first-degree aggravated manslaughter. The 10-year term was the minimum permissible base term for the offense and the five-year parole disqualifier was the maximum imposable on that base term. Defendant appealed the sentence, contending that a maximum parole disqualifier is inconsistent with a minimum base term. We affirmed, but the Supreme Court remanded for resentencing because of two "errors": the trial court did not explain or justify either the imposition of the minimum base term or the inconsistency between that term and the maximum parole disqualifier. At resentencing, the trial judge imposed a 15-year base term with five years of parole ineligibility.
On defendant's appeal, we held that fifteen years was the appropriate base term, but its imposition "violated [defendant's] constitutional right against double jeopardy." Id. at 596, 583 A.2d 352. Noting that defendant had not challenged the minimum base term, but only the parole ineligibility term, we found that "she had an expectation that the base prison term of ten years would be *339 preserved while her parole ineligibility term would either be found excessive or affirmed." Id. at 598, 583 A.2d 352. Finding further that a correlation between the base term and the parole disqualifier could not be required where the base term was erroneously but irrevocably fixed too low, we reinstated the original sentence.
In Towey, of course, the original sentence was not statutorily unauthorized but was simply unsupported by the necessary findings. See State v. Ervin, 241 N.J. Super. 458, 470-72, 575 A.2d 491 (App.Div. 1989) (distinguishing between "illegal" and "excessive" sentences), certif. denied, 121 N.J. 634, 583 A.2d 328 (1990). The errors identified by the Supreme Court were in the exercise of sentencing discretion, which more readily invites double jeopardy analysis. See Kirk, supra, 243 N.J. Super. at 642, 581 A.2d 115 ("the Double Jeopardy Clause prohibits the increase of the term imposed in a discretionary sentence"). Nevertheless, Towey stands for the proposition that erroneous exercises of discretion in sentencing cannot be corrected to a defendant's disadvantage, at least where defendant has begun service of the sentence.
In State v. Heisler, 192 N.J. Super. 586, 471 A.2d 805 (App.Div. 1984), defendant was initially sentenced to probation with 364 days of county jail service. He appealed, challenging the sentence as illegal because the statute permitted only 180 jail days as a condition of probation. We found the sentence illegal and remanded for resentencing. The trial judge resentenced defendant to an indeterminate term not to exceed five years. On defendant's further appeal, we acknowledged that an illegal sentence can be corrected by imposition of "a sentence mandated by law," but found that "[h]ere the judge set aside an illegal sentence and imposed a substantially harsher sentence not required by law." Id. at 592, 471 A.2d 805. Analyzing the parole eligibility rules, we found that "[t]he disparity between 180 days and 364 days of incarceration [in the county jail] is ... a mere 26 days," while the presumptive primary parole eligibility date on a five-year indeterminate sentence was 32 months. Because of "the substantial and unjustifiable discrepancy" between the original illegal sentence *340 and that imposed upon resentencing, we held that imposition of the five-year term violated "principles of fundamental fairness and due process." Id. at 593, 471 A.2d 805. We accordingly ordered that defendant be resentenced to probation with 180 jail days.
That ruling was based on due process rather than double jeopardy principles: the enhanced sentence "penalizes defendant for successfully challenging the illegal sentence and has a chilling effect on defendant's right to appeal." Ibid.; see generally, North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); State v. Pindale, 279 N.J. Super. 123, 652 A.2d 237 (App. Div. 1995). That rationale is not applicable here, for defendant did not challenge his original sentence at all. See Beech v. State, 436 So.2d 82, 83 (Fla. 1983) (Pearce analysis inapplicable where court corrects an illegal sentence on its own motion or on motion of the state). We also recognize that Heisler suggested that the "substantially harsher" sentence might have been justified on a different record: it comments that "[t]he judge did not articulate any reasons justifying the substantial increase in sentence" and that "the record is barren of any evidence of intervening conduct or prior oversight to justify the new sentence." Heisler, supra, 192 N.J. Super. at 593, 471 A.2d 805. The opinion recites, however, that defendant had sought an emergency stay of the illegal sentence immediately upon filing his appeal; it does not discuss how partial execution of the illegal sentence might affect the analysis.
Although Heisler is thus distinguishable, it does support the suggestion here of unfairness in defendant's resentencing to a term 10 years longer than required by law. Also instructive is State v. Rodriguez, 97 N.J. 263, 478 A.2d 408 (1984), which holds that "when ... defendant's underlying convictions are interdependent, justifying merger, the appellate court, vacating one of these sentences on the vacated conviction, can also in its sound discretion vacate the sentence on the remaining conviction when the sentences as imposed were themselves interrelated." Id. at 275-276, 478 A.2d 408. Although the trial court can thus increase a *341 sentence on the conviction or convictions remaining after merger, the new aggregate sentence cannot be "in excess of the sentence originally imposed." Id. at 277, 478 A.2d 408. The rationale is that the new sentence simply gives effect to "the sentencing court's uncontestable determination" as to the proper punishment for defendant's conduct. Id. at 276, 478 A.2d 408. The negative implication is that a defendant is unfairly imposed upon if his sentence is increased beyond the term contemplated by the initial sentence. See also State v. Womack, 206 N.J. Super. 564, 503 A.2d 352 (App.Div. 1985) (inclusion in judgment of parole ineligibility term unstated at sentencing was permissible where judge gave "indication" at sentencing that he intended to impose parole ineligibility term), certif. denied, 103 N.J. 482, 511 A.2d 658 (1986); State v. Koch, 256 N.J. Super. 207, 606 A.2d 875 (Law Div. 1991) (sentences below those statutorily authorized could be corrected by imposing presumptive sentences for the offenses where the original sentencing judge had demonstrated an intention to impose presumptive terms on all sentences).
Those cases are hardly dispositive of the issue presented. They do, however, evidence our courts' recognition of the unfairness that can attend increases in sentences beyond their initially stated scope, particularly without defendant's request and after execution of the sentence has begun. Increases are permissible in certain circumstances, but our cases have not described those circumstances broadly. Although a defendant has no legitimate expectation of finality in a sentence below the statutorily mandated minimum sentence, there is nothing in the New Jersey cases to compel the conclusion that the setting aside of an illegal sentence at the State's behest necessarily "wipes the slate clean" so as to permit imposition of any statutorily authorized sentence. Cf. State v. McMeekin, 204 N.J. Super. 496, 503, 499 A.2d 515 (App. Div.) (Title 2C sentencing slate "was wiped clean" where defendant requested resentencing under Title 2A), certify. denied, 102 N.J. 302, 508 A.2d 188 (1985).

*342 III

Relevant caselaw from other jurisdictions is similarly sparse and inconclusive. Most, though not all, jurisdictions hold, as does New Jersey, that correction of an invalid sentence by increasing the punishment, even after execution of the sentence has begun, does not constitute double jeopardy. Lee R. Russ, Annotation, Power of Court to Increase Severity of Unlawful Sentence  Modern Status, 28 A.L.R.4th 147 (1984). Only rarely, however, has it been directly held that, in correcting the illegality, the resentencing court can impose any sentence which could have been validly imposed in the first place. See State v. Blankenship, 195 Neb. 329, 237 N.W.2d 868, 869 (1976) (an illegal sentence is invalid and "of no effect" and thus irrelevant to the resentencing).
In a number of cases, courts have simply assumed that the authority to increase the punishment upon correction of an invalid sentence means that the resentencing court may impose any statutorily authorized sentence. See, e.g., Stuckey v. Stynchcombe, 614 F.2d 75 (5th Cir.1980); Christopher v. United States, 415 A.2d 803 (D.C. 1980). Those cases, however, largely rely on particular facts to justify a term above the statutory minimum. See, e.g., Stuckey, 614 F.2d at 77 (events occurring after the initial sentencing properly taken into account at resentencing); Christopher, 415 A.2d at 804 (interdependency of legal and illegal custody and probation provisions justified recasting of entire sentence).
Some cases suggest, indeed, that resentencing above the statutory minimum may be permissible only in exceptional circumstances. In United States v. Kenyon, 519 F.2d 1229 (9th Cir.), cert. denied, 423 U.S. 935, 96 S.Ct. 293, 46 L.Ed.2d 267 (1975), the Ninth Circuit sustained the imposition of special parole terms on resentencing. Such terms were required by statute, but were overlooked at the initial sentencing; at resentencing the judge imposed terms "far in excess of the statutory minimum." Id. at 1233. The court recognized that most of the reported cases involved illegal sentences "increased only by the minimum necessary to achieve compliance with the statute." Ibid. However, the *343 court held that "[w]hen a judge has omitted entirely a category of punishment mandated by statute, he has not exercised the discretion with respect to that punishment which the statute contemplates," ibid., and accordingly can exercise such discretion on the resentencing.
In State v. Rolling, 218 Neb. 51, 352 N.W.2d 175 (1984), defendant was initially sentenced to less than ten years on a number of convictions, although the applicable statute required sentences of not less than ten nor more than sixty years. At resentencing ordered by the Nebraska Supreme Court, the trial judge imposed a sentence of not less than ten and not more than sixty years. On defendant's appeal, the Supreme Court ordered the sentence reduced to ten years "unless some evidence is presented at the third sentencing to indicate that a more severe sentence than the minimum required by law should be imposed." Id. 352 N.W.2d at 179.
The Third Circuit has expressed an even more cautious view. In United States v. Guevremont, 829 F.2d 423, 428 (3d Cir.1987), the court would go only so far as to say that "an increase of sentence to the statutory minimum does not violate the double jeopardy protection." The court affirmed a corrected sentence beyond the statutory minimum, but in reliance on the distinct principle that "where the sentencing judge's intention is clear, an increase of the sentence to make it conform with that intention is constitutional." Ibid; see also Womack, supra, 206 N.J. Super. at 571-72, 503 A.2d 352. In framing that narrow holding, the court pointedly noted its awareness of "the potential mischief of permitting corrections of sentences." Guevremont, 829 F.2d at 429.
The Second Circuit has similarly declined to allow unlimited discretion in resentencing upon correction of an illegal sentence. In Stewart v. Scully, 925 F.2d 58 (2d Cir.1991), defendant was sentenced to an indeterminate term of 10 to 20 years. After learning that the minimum term was required to be one-third of the maximum term, he applied for imposition of the proper minimum term. The trial judge resentenced him to a term of 8 to *344 24 years. On appeal from the denial of his habeas corpus petition, the Court of Appeals ordered that defendant be resentenced "so that his maximum period of imprisonment does not exceed twenty years." Id. at 59. The court rejected the state's contention that the original sentence was entirely void and that the trial judge "was therefore free to impose any sentence complying with the applicable sentencing statutes." Id. at 64. The only defect in the sentencing, the court found, was the "unlawful relationship between the maximum and minimum terms," which "was as easily correctable by a reduction in the minimum term as by an increase in the maximum term." Ibid. The court invoked the language of United States v. Fogel, 829 F.2d 77, 90 (D.C. Cir.1987):
The ... court ... was free to correct the defect in the original sentence but only to the extent necessary to bring the sentence into compliance with the statute.... [T]he ... court unnecessarily increased the appellant's sentence, thus producing a violation of the double jeopardy clause....
Ibid.
Fogel itself is instructive. Defendant was sentenced "to twelve-months house arrest." Fogel, 829 F.2d at 80. Eight days later, he was notified that his sentence would be changed and that a resentencing hearing had been set for the following day. At the hearing, the judge vacated the sentence, resentenced defendant to a total of 3 to 9 years imprisonment, suspended execution of that sentence, and placed defendant on three years probation with twelve months to be served in house arrest.
Speaking through Judge Bork, the court first found that although the original sentence had improperly failed to order and suspend execution of a custodial sentence, that sentence was not "void" because it was "within the maximum and minimum sentences authorized by the penalty statute and the term of probation is authorized by [statute]." Id. at 83. Addressing the double jeopardy claim, the court found that defendant had a legitimate expectation of finality in the severity of the sentence originally imposed, because "an increase in [defendant's] term of probation *345 was not necessary to bring the sentence into compliance with any statute." Id. at 88. Interpreting the double jeopardy clause as "not intended to be a requirement that all sentences be technically correct in every aspect or else be subject to revision upward," the court found that the trial judge was entitled to correct the defective sentence "only to the extent necessary to bring the sentence into compliance with the statute." Having "unnecessarily increased" the probationary term, the trial judge had violated the double jeopardy clause. Id. at 89-90.
Also of note is Safrit v. Garrison, 623 F.2d 330 (4th Cir.1980), which has close factual parallels to the present case. There defendant had been sentenced to an indeterminate term "as a youthful offender." The judgment did not state whether he was classified a "committed" or a "regular" youthful offender: "committed" offenders were to be housed separately from adult prisoners and were entitled to mandatory release on parole after serving four years. After three years in custody, defendant was transferred to an institution where he was incarcerated with adults. Regarding that to be in violation of his commitment, defendant sought relief in the state court, which found the original sentence ambiguous and ordered resentencing. Defendant was resentenced as a "committed" youthful offender to the same indeterminate term, but that sentence was later vacated because an indeterminate sentence was impermissible under the "committed" youthful offender statute. Defendant was thereupon sentenced as a regular youthful offender for the same indeterminate term.
On defendant's appeal from the denial of his habeas corpus petition, the Fourth Circuit found that defendant's status as a "committed" youthful offender was not subject to vacation and that he was accordingly entitled to mandatory parole release after he had served four years. The court recognized that a void or illegal sentence may be corrected, but held, through Chief Judge Haynsworth, that the part of the sentence finding defendant to be a "committed" youthful offender "was neither void nor illegal" and thus "could not be changed to impose a harsher sentence" because *346 "[s]uch a change would violate the double jeopardy clause." Id. at 332.
Finally, we note the holding of Breest v. Helgemoe, 579 F.2d 95, 101 (1st Cir.), cert. denied, 439 U.S. 933, 99 S.Ct. 327, 58 L.Ed.2d 329 (1978), that after "a substantial period of time," it might be violative of due process "to alter even an illegal sentence in a way which frustrates a prisoner's expectations by postponing his parole eligibility or release date far beyond that originally set." Accord United States v. Lundien, 769 F.2d 981, 987 (4th Cir.1985), cert. denied, 474 U.S. 1064, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986). We do not suggest that holding is applicable here, but it does further illustrate the many strictures courts have imposed on the correction of illegal sentences.

IV
The general tenor of the caselaw, as we read it, is that the court's authority in correcting sentences is limited and must be sparingly exercised. Although there are cases evidencing contrary views, they are relatively few and, to us, unpersuasive. See, e.g., State v. McCullough, 78 Ohio App.3d 587, 605 N.E.2d 962 (1992) (where defendant was originally sentenced to two concurrent 10- to 25-year terms but the minimum terms exceeded statutory authority, resentencing to two consecutive 5- to 25-year terms was permissible). The conclusion we draw here is that defendant's resentencing violated his double jeopardy rights, and that he must now be sentenced as a young adult offender to concurrent five-year indeterminate terms.
The election of the original sentencing judge to treat defendant as a young adult offender was a lawful discretionary call. The State had no right to appeal that decision; in its appeal of the 28-month sentence, the State did not challenge defendant's sentencing as a young adult offender. Cf. N.J.S.A. 2C:44-1f(2) (granting the State a right to appeal certain sentences, but not a young adult offender sentence). Depriving defendant of that sentencing classification after he had begun to serve his sentence was a *347 violation of his double jeopardy rights. Safrit, supra, 623 F.2d at 332.
The legal effect of the decision to sentence defendant as a young adult offender was to fix five-year indeterminate sentences on the first- and third-degree crimes unless the sentencing court "in its discretion, for good cause shown" chose to impose a greater sentence, up to the maximum provided by law for the crimes. N.J.S.A. 30:4-148. See State v. Ferguson, 273 N.J. Super. 486, 492, 642 A.2d 1008 (App.Div.), certif. denied, 138 N.J. 265, 649 A.2d 1285 (1994). The original sentencing judge did not impose a greater sentence, apparently because he misunderstood N.J.S.A. 30:4-148. But his inaction  and the resultant preservation of the prescribed five-year indeterminate terms  were statutorily authorized, no matter how misguided. The State had no right to appeal the judge's failure to exceed the five-year minimum sentence, and defendant had no reason to question the finality of that disposition. Had he imposed a five-year term without recognizing his discretion to do more, he surely could not have later increased the sentence once defendant had begun to serve it. The situation here is conceptually no different: the 28-month sentence was subject to increase because it was unauthorized by statute, but that neither necessitated nor justified setting aside, and increasing the severity, of the lawful elements of the original sentence. Towey, supra, 244 N.J. Super. at 598, 583 A.2d 352; Kirk, supra, 243 N.J. Super. at 642, 581 A.2d 115; Stewart, supra, 925 F.2d at 64; Fogel, supra, 829 F.2d at 88-90; Safrit, supra, 623 F.2d at 332.
In reaching our conclusion that defendant could only be resentenced to an aggregate five-year indeterminate term, we have not overlooked the fact that the original sentencing judge stated his intent to impose "the maximum that I can sentence you" and believed the 28-month sentences to be "all I can do." Those comments cannot be regarded as the judge's determination that there was "good cause" to impose sentences beyond the five years fixed by N.J.S.A. 30:4-148. Indeed, the judge specifically referred *348 to the statute, the five-year indeterminate term, and his authority to go beyond that "up to the statutory maximum"; his comments could have meant simply that he was disappointed that he could not impose more than 28-month terms. In any event, the judge did not intend to impose a sentence beyond five years. To the contrary, he bemoaned only his inability to impose anything more than 28 months. We accordingly see no basis for invoking the principle that sentences may be increased to conform with the express or apparent intent of the original sentencing judge. See, e.g., Rodriguez, supra, 97 N.J. at 276, 478 A.2d 408; Womack, supra, 206 N.J. Super. at 571, 503 A.2d 352; Koch, supra, 256 N.J. Super. at 213, 606 A.2d 875; Guevremont, supra, 829 F.2d at 429.
The simple fact is that the original sentencing judge lawfully sentenced defendant as a young adult offender under circumstances requiring five-year indeterminate sentences. The sole illegality was that the indeterminate terms were fixed below five years. That illegality can be corrected. But, once service of the sentence commenced, the lawful discretionary elements of the sentence  no matter how thoughtlessly or erroneously conceived  could not be made more burdensome. Defendant benefits, to be sure, from the first sentencing judge's misstep, but
The potential for abuse in broad judicial power to increase sentences outweighs the possibility of giving a few defendants the benefits resulting from a judicial mistake.
United States v. Turner, 518 F.2d 14, 17 (7th Cir.1975).
The matter is accordingly remanded to the trial court for resentencing of defendant as a young adult offender to concurrent indeterminate terms of five years each, with all appropriate credits.
NOTES
[1] The permissible sentences are set forth in N.J.S.A. 30:4-148:

The courts in sentencing pursuant to N.J.S. 2C:43-5 shall not fix or limit the duration of sentence, but the time which any person shall serve in confinement or on parole shall not in any case exceed 5 years or the maximum term provided by law for the crime for which the prisoner was convicted and sentenced, if such maximum be less than 5 years; provided, however, that the court, in its discretion, for good cause shown, may impose a sentence greater than 5 years, but in no case greater than the maximum provided by law, and the commitment shall specify in every case the maximum of the sentence so imposed.