**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2294-18T5

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

DAMEON STACKHOUSE,

     Defendant-Respondent.

_____

Argued August 5, 2019 – Decided August 12, 2019

Before Judges Sabatino and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 04-07-0503.

Lauren E. Bland, Assistant Prosecutor, argued the cause for appellant (Michael H. Robertson, Somerset County Prosecutor, attorney; Lauren E. Bland, of counsel and on the brief).

Ruth E. Hunter, Designated Counsel, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Ruth E. Hunter, on the brief).

PER CURIAM

This appeal by the State arises out of the trial court's January 29, 2019 order denying the State's motion to correct the parole supervision period set forth in defendant's 2006 judgment of conviction ("JOC"). For the reasons that follow, we affirm.

In May 2006, a jury found defendant Dameon Stackhouse guilty of two separate counts of second-degree robbery, N.J.S.A. 2C:15-1(a)(1), involving two different victims. As previously detailed in our opinion on direct appeal, in the early morning of June 14, 2004, defendant accosted a man who had been sitting in his car parked in his own driveway. State v. Stackhouse, No. A-1254-06 (App. Div. Nov. 1, 2007) (slip op. at 2), certif. denied, 193 N.J. 586 (2008). Defendant took the man's wallet and keys. Id. at 3. He drove a car away and crashed it into a tree. Ibid. Defendant then fled the car, broke into a nearby house and forced the female resident to give him money and the keys to her SUV. Ibid. Defendant drove the SUV away and was spotted by police. Id. at 3-4. During the ensuing police chase, defendant lost control of the SUV, and it rolled over. Id. at 4. A search of defendant produced money and items belonging to the two victims. Ibid.

Each of defendant's robbery convictions is subject to the terms of the No Early Release Act, N.J.S.A. 2C:43-7.2 ("NERA"). Among other things, NERA

requires that such sentences are each subject to a mandatory eighty-five percent parole ineligibility period, plus a three-year period of mandatory parole supervision for second-degree crimes upon a defendant's release from incarceration. Ibid. As the Supreme Court confirmed in State v. Friedman, 209 N.J. 102, 120 (2012), the legislative intent of NERA requires that such parole supervision periods be served consecutively, rather than concurrently, when a defendant is convicted of multiple NERA offenses in the same case and sentenced to consecutive custodial terms.

At defendant's sentencing hearing on August 18, 2006, the trial judge[1] imposed an aggregate fourteen-year custodial sentence, consisting of a seven-year sentence on each of the two armed robberies. In his written statement of reasons appended to the JOC, the judge made clear that "[c]onsecutive sentences are appropriate in this case," given the "very violent night of terror" defendant had inflicted on the "separate victims [at] separate times in the night." That consecutive disposition is consistent with the judge's oral ruling at sentencing.

Although it was not discovered until recently, the JOC erroneously states that defendant is "ordered to serve a 3 year term of parole supervision which term shall be begin as soon as defendant completes the sentence of

_____

[1] The trial judge has since retired.

A-2294-18T5

incarceration." To comport with the law, the JOC should have recited instead that defendant shall serve two consecutive three-year terms of parole supervision, or a total of six years.

Following the issuance of the JOC containing this apparent clerical error, defendant unsuccessfully pursued a direct appeal of his convictions on other grounds, alleging both pretrial and trial errors. We rejected those arguments and affirmed his convictions in our November 1, 2007 unpublished opinion. Stackhouse, slip op. at 7-8. Thereafter, defendant filed a petition for post-conviction relief ("PCR"), alleging ineffective assistance of his trial and appellate counsel. In March 2012, we affirmed the trial court's denial of defendant's PCR petition in another unpublished opinion. State v. Stackhouse, No. A-0202-10 (App. Div. Mar. 20, 2012), certif. denied, 212 N.J. 432 (2012).

Defendant subsequently completed his mandatory minimum custodial term. He was released from prison and commenced a period of parole supervision. Before the third year of that parole supervision period was over, the Department of Corrections alerted the County Prosecutor's Office to the error in the JOC.

The Prosecutor's Office moved to correct the JOC to recite a six-year period (two consecutive three-year periods) of parole supervision. Defendant

opposed the motion. He argued that the motion was untimely, that the requested increase in the JOC's stated period of parole supervision would be unfair, and that it would unconstitutionally violate his expectations of finality.

After hearing oral argument, a trial judge (who had not been the original sentencing judge) denied the State's motion.

The State then filed the instant appeal. Although the case was originally docketed on the excessive sentencing calendar, we requested plenary briefing. In the meantime, defendant completed three years of parole supervision on May 6, 2019. We have maintained the status quo pending this opinion.

Having considered the parties' arguments, we affirm the trial court's denial of the State's eleventh-hour motion to alter the JOC. Only a brief discussion is warranted.

We agree with the State that, consistent with the governing principles of Friedman, the JOC should have recited a six-year aggregate period of parole supervision rather than a three-year nonconsecutive period. We also recognize that Rule 3:21-10(b)(5) states that an incorrect sentence "may" be corrected at any time before the sentence is completely served. Even so, the court's authority to take such corrective action to lengthen a stated sentence is limited and should be "sparingly exercised," particularly if the correction is sought by the State

A-2294-18T5

"after execution of the sentence has begun." State v. Eigenmann, 280 N.J. Super. 331, 341, 346 (App. Div. 1995).

Here, the State did not seek relief to correct the JOC until defendant had duly served his sentence for nearly thirteen years after his 2006 sentencing, and just four months shy of the termination date specified in the JOC. As the trial court recognized, defendant has made great strides to rehabilitate himself, including an extensive history of volunteer work, college studies, and employment by the Rutgers Center of Excellence. He has spoken on the floor of the Legislature and, with the permission of parole authorities, has had speaking engagements in other jurisdictions. It would be fundamentally unfair at this extraordinarily belated time[2] to amend the JOC and possibly thwart his continued post-release good works. We do not believe the legislative objectives of NERA are undermined by the trial court's ruling in these unique circumstances.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] In making this observation, we do not intend to suggest the County Prosecutor's Office failed to act diligently once it eventually was told by the Department of Corrections about the JOC issue. The unfairness to defendant stems instead from the long period in which the issue was overlooked.

A-2294-18T5